WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------X
:
ANTON GLENZ, VALENTINA  :
GIACCHI; DONNA MOYER, and  :
DOROTHY WOOD individually and on  :
behalf of all others similarly situated,  :
:
     Plaintiffs,  :
:
v.  :
:
RCI, LLC, formerly known as Resort  :
Condominiums International, LLC, a New  :
Jersey corporation,  :
:
     Defendant.  :
:
-----------------------------------------------------X

Civil Action
No. 09-cv-00378 (PGS)

**SECOND AMENDED
CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Anton Glenz, Valentina Giacchi, Donna Moyer, and Dorothy Wood ("Plaintiffs'),
individually and on behalf of all others similarly situated, by and through their undersigned
counsel, allege as follows:

### NATURE OF THE ACTION

    1.    Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2)

and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons throughout the United

States and its territories who are or were Resort Condominiums International, LLC's ("RCI")

Points Members.

    2.    RCI is the self-proclaimed "largest timeshare vacation exchange network in the

world."

#3904196(152323.002)

3.      By buying a timeshare (a legal interest in resort real estate for a specified period of time each year) and joining RCI, RCI Points members have the right to participate in an exclusive exchange program giving them access to thousands of other RCI timeshares around the world. As represented by RCI, each member can exchange their points for reservations at RCI Points locations or RCI Weeks resort locations. RCI Points members are told that only members of the program can access the timeshares. RCI created and perpetuates this image of its program through a uniform fraudulent, deceptive and unconscionable marketing scheme.

4.      RCI Points members, however, are not the only individuals who have access to the timeshares. Instead, RCI engages in an unconscionable commercial practice of skimming a large percentage of the timeshares from the system, including many prime timeshares, and renting them to the general public at a profit to RCI, or selling them to vendors who then rent them to the general public. RCI also uses these timeshares for promotional purposes and as benefits for its employees, further depleting the number of times hares available for member exchanges.

5.      Through these and other business practices, RCI converts many of the prime timeshare deposits into cash, leaving fewer and much less desirable timeshares in the system for RCI Points members to access. As a result of these unconscionable practices, the actual experience of many RCI Points members, like Plaintiffs, is that no matter how meticulously they follow RCI's rules and procedures, and no matter how far in advance they begin looking for a desirable exchange, they simply cannot find available destinations. RCI profits by these practices at the expense of its members, whose timeshares and RCI "benefits" are rendered virtually worthless.

3904196

6.     Plaintiffs and others have been and continue to be damaged by RCI's course of conduct.

## PARTIES

7.     Plaintiff Anton Glenz is a citizen of Ellsberry, Missouri. Plaintiffs became a member of RCI Points on May 3,2004, in conjunction with his purchase of a Timeshare Interval (as defined below) at Sunrise Ridge Resort in Pigeon Forge, Tennessee. Plaintiff Glenz paid $9,490 for this Timeshare Interval, which included Exchange Fees for his membership with RCI Points. At all relevant times herein, Plaintiff Glenz paid all RCI Points membership fees and all other fees associated therewith.

8.     Plaintiff Valentina Giacchi is a citizen of Hoboken, New Jersey.  She became a member in 2003 in conjunction with her purchase of a Timeshare Interval from Summer Bay Resort, 25 Town Center Blvd., Suite C, Clermont, Florida.  Plaintiff Giacchi paid $14,000.00 for which was to receive 75,500 points with this timeshare investment.  At all times relevant herein, Plaintiff Giacchi paid all RCI Points, membership fees and all other fees associated therewith.

9.     Plaintiff Donna Moyer is a citizen of Apex, North Carolina.  She became a member in 2008 in conjunction with her purchase from Patriots Place Resort in Williamsburg, Virginia.  She paid $6,995 for which she was to receive 76,000 points.  At all time relevant hereto, Plaintiff Moyer paid all RCI Points, membership fees and all other fees associated therewith.

10.     Plaintiff Dorothy Wood is a citizen of Henderson, Nevada.  She became a member in 2004 in conjunction with her purchase of a Timeshare Interval from Avia West in Vancouver, Canada.  She paid $23,000 and received 92,000 points with this timeshare

3904196

investment.  At all times relevant herein, Plaintiff Wood paid all RCI Points, membership fees and all other fees associated therewith.

11.    Defendant RCI maintains its principal place of business in Parsippany, New Jersey.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 D.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, includes more than 100 Class members, and is a class action in which at least one member of the Class is a citizen of a different state than RCI.   See 28 D.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over RCI because it is authorized to do business and in fact does business in this state, and its headquarters are located in this state.

13.    Venue is proper in the District of New Jersey because a substantial part of the events detailed herein occurred in this District.

## STATEMENT OF FACTS

**A.    Timeshares and RCI.**

14.    A timeshare is a form of joint interest in real estate in which numerous individuals share a legal interest in and enjoy the use or occupation of the real estate for a specified period of time.

15.    Legal interest in a timeshare can be acquired in two ways. The first is by acquisition of fee title to a specific piece of real estate for a specified period of time, which is known as a "Deeded Interval." The owner of a Deeded Interval, along with all other Deeded Interval owners in the same real estate, collectively own the real estate.

-4-

16.     The second way a legal interest in a timeshare can be acquired is by acquisition of a leasehold interest in or license to use a specific piece of real estate for a specified period of time, which is known as a "Vacation Interval." With Vacation Intervals, the real estate developer typically retains ownership of the real estate, but leases or licenses the right to use a portion of the real estate to individual lessees or licensees at agreed upon terms.

17.     The specified period of time during which the owner of a Deeded Interval or Vacation Interval has the right to occupy the real estate is known as a "Timeshare Interval."

18.     Timeshare Intervals generally cost between $8,000 and $20,000, depending on the interest being acquired. Additionally, Timeshare Interval owners are typically required to pay annual maintenance fees in connection with their Timeshare Intervals, which steadily increase over time.

19.     RCI claims that 7 out of every 10 timeshare resorts are affiliated with RCI, thereby giving members access to more than 3,700 affiliated resorts worldwide.

20.     RCI is not licensed to engage in the business of a real estate broker.

21.     RCI purports to facilitate the exchange of Timeshare Intervals among owners of Timeshare Intervals through, inter alia, the RCI Points program. RCI defines the "RCI Points Exchange Program" ("RCI Points") on its website as follows:

> When you purchase your vacation week or convert an existing vacation week, its assigned an RCI points value, which simplifies the exchange process. The RCI Points value depends on certain factors including the supply and demand at that resort location, the type of unit, season, and evaluations from Members who've stayed there. Your RCI Points are made available to you annually, at the beginning of your Use Year.
>
> Once you receive your annual allotment of RCI points, you can exchange them to make reservations at both Points and weeks resorts, as well as RCI Points Partners for hotels, rental cars, cruises, airfare and entertainment.

-5-

22.   RCI charges annual fees for membership in RCI Points.

23.   RCI depicts the RCI Points exchange program as a convenient, easy means for Points Members to achieve flexibility with their Vacation Time. On its website, RCI states that RCI Points Members have access to a broad range of destinations and experiences.

**B.    RCI's Practices.**

24.   Through a coordinated and uniform marketing strategy, RCI creates and maintains the impression that access to Vacation Time is completely or almost completely limited to RCI members and that RCI members will be able to exchange their RCI Points for comparable Timeshare Intervals around the world. To create this impression, RCI, directly and indirectly through agents or intermediaries, makes misrepresentations and knowingly conceals, suppresses or omits material facts in connection with the sale or advertisement of RCI Points, and in connection with RCI's subsequent operation of RCI Points, with the intent that members and prospective members will rely thereon to purchase a Timeshare Interval, purchase memberships in RCI Points, maintain and renew memberships in RCI Points, pay Exchange Fees to RCI, and pay other fees to RCI.

25.   RCI implements its uniform marketing strategy through various channels, directly targeting RCI members and prospective members, including, but not limited to, RCI's publications, website, and advertisements.  RCI also implements its uniform marketing strategy indirectly through agents or intermediaries such as resort developers, which RCI calls affiliates, and on information and belief RCI develops and initiates that strategy in New Jersey.

26.   Vacation exchange opportunities play an important role in RCI's affiliates' ability to "close the sale" with potential Timeshare Interval purchasers. RCI develops and provides standardized "sales tools" to its affiliates, including but not limited to membership kits, resort

-6-

directories, brochures, videos and DVDs. RCI develops these standardized sales tools and distributes them to its affiliates to create and reinforce RCI members' and prospective members' false belief that access to Vacation Time is completely or almost completely limited to RCI members, and that RCI Points Members will be able to exchange their Points for comparable Timeshare Intervals around the world. RCI also provides consulting and advisory services to the affiliated resorts and others in connection with the development and management of tourism-related real estate, programs to foster customer loyalty, in-house and outsourced travel agency services and third party vacation club exchanges. RCI represents that its sales tools reinforce the benefits of a Timeshare Interval purchase and that use of these sales tools adds value to the Timeshare Intervals its affiliates are selling. RCI provides the sales tools to increase closing rates, enhance loyalty, and drive the growth of its affiliates, and its sales tools have made RCI's affiliates some of the top resort developers in the world. RCI's affiliates benefit from the ability to reassure potential Timeshare Interval purchasers that their post-purchase exchange services and benefits are backed by RCI.

27.     By virtue of the representations and omissions in these standardized sales tools, RCI acquires members indirectly through affiliated resorts. RCI knows and intends that the representations and omissions in its sales tools are material to RCI members' and prospective members' decisions to purchase Timeshare Intervals, purchase memberships in RCI Points, maintain and renew memberships in RCI Points, pay Exchange Fees to RCI, and pay other fees to RCI.

28.     Contrary to its representation to members and prospective members, RCI engages in unconscionable commercial practices by routinely making Vacation Time available to persons other than RCI members, thereby diluting the quantity and quality of Vacation Time available to

-7-

them. As described below, RCI's strategy is to take premium Vacation Time and make it available to non-RCI members for cash rentals and other purposes.

29.     RCI uses Vacation Time to earn rental income. Cendant Corporation, RCI's parent company, filed a 10k with the SEC in 2005 that reads in part, under the heading "Vacation Exchange": "Through our RCI subsidiary, the Vacation Network Group provides vacation exchange services to over three million owners of vacation ownership interests at more than 4,000 resorts in approximately 100 countries." Not coincidentally, that same 10k reads in part, under the heading "Vacation Rental": "Through RCI, our vacation rental business also has relationships with approximately 4,000 affiliated resorts and over three million owners of vacation ownership interests. Most of our rental activity takes place in Europe, the United States and Mexico, although we have the ability to acquire and rent inventory in over 100 countries."

30.     RCI has at times admitted that it rents Vacation Time to non-RCI members, but claims the Vacation Time it rents consists only of Vacation Time that no Points Member would want or use.

31.     In a number of timeshare forums frequented by Timeshare Interval owners and prospective owners, RCI has represented that the Timeshare Intervals deposited by RCI members are available exclusively for exchange unless and until they fall within the "Marketable Inventory" category, which refers to Vacation Time members historically do not want or use. RCI has represented, through its Director of Communications John R. Barrows, that Marketable Inventory is comprised of "last minute cancellations" and "weeks that no member will request, and no member will use," and that "no RCI member's right to a fair exchange is ever compromised by any RCI marketable inventory program." Letter from John R. Barrows to The Timeshare Beat, http://www.thetimesharebeat.com12002/ts/feb/0215-03t.htm.This is untrue: In

3904196

2004, while RCI's exchange volume decreased by 2%, its combined points and rental transaction volume increased by 18%. That is, while the pool of Vacation Time deposited into the RCI SPACEBANK® system slightly decreased, RCI's depletion of Vacation Time from the RCI SPACEBANK® system for the purpose of renting that Vacation Time dramatically increased.

32.    RCI places Vacation Time, including premium Vacation Time, into Marketable Inventory for rental by non-RCI members. In some instances, Vacation Time from highly requested areas during popular times of travel goes straight to Marketable Inventory. RCI does not replenish the exchange inventory with comparable Vacation Time. RCI's rental program constitutes an unconscionable commercial practice. Further, RCI misrepresents and knowingly conceals, suppresses and omits material facts regarding the nature and extent of its rental program, and the attendant depletion of inventory from the RCI SPACEBANK® system, with the intent that members and prospective members will rely thereon.

33.    In addition to renting Vacation Time, RCI secretly enters into "Marketable Vacation Time Agreements" with third parties ("Vendors") that grant the Vendors the right to purchase Vacation Time from RCI and sell that Vacation Time to the general public. RCI keeps the proceeds of all sales of Vacation Time to Vendors.

34.    In order to conceal RCI's sale of Vacation Time to Vendors, RCI routinely prohibits Vendors from referring to RCI, directly or indirectly, in their communications with purchasers and prospective purchasers, using any RCI materials or otherwise associating themselves with, or in any way publicly identifying their relationship to, RCI.

35.    On information and belief, Vendors offer or have offered Vacation Time through the following websites, among others: resortrip.com; activeinternational.com; eLeisurelink.com; bid4vacations.com;        skyauctions.com;        amexcondodirect.com;        getravelop.com;

veteransholidays.com; holidaynetwork.com; and ebay.com. On information and belief, RCI also offers Vacation Time through its corporate affiliates, including Holiday Networks, Inc., which operates under the following trade names: Condo Rental Network, Elite Reservations, Holiday Network, Select Vacations, Snap Travel, and Triprewards Vacation Network.

36.    RCI has maintained, and continues to maintain, a common, routine, and customary business practice of selling Vacation Time to Vendors for resale to the general public. This practice constitutes an unconscionable commercial practice. Further, RCI misrepresents and knowingly conceals, suppresses and omits material facts regarding the nature and extent of its sales of Vacation Time to Vendors, and the attendant depletion of inventory from the RCI SPACEBANK® system, with the intent that members and prospective members will rely thereon.

37.    On information and belief, RCI further decreases the pool of Vacation Time available for Points Members by allowing Vendors and other third parties to use Vacation Time in the promotion of other products sold by RCI affiliates. For example, in 2001, RCI began making Vacation Time available to real estate brokers affiliated with Cendant's subsidiary ERA Franchise Systems, Inc. ("ERA"). This program allows ERA brokers to receive discounted rates on the purchase of RCI Resort Vacation Certificates. Each certificate (valued up to $1,500) entitles the recipient to a seven-night getaway at a RCI affiliated resort. These Vacation Certificates are touted as marketing tools for ERA's brokers. ERA asserts the Vacation Certificates can be used to recruit new sales associates, thank a relocation client, follow-up on a closing, or donate to a local fundraiser. RCI affiliates have also offered Vacation Time for free to induce the purchase of vacation cruises. RCI further uses Vacation Time as a form of employee compensation.

-10-

38.     RCI's routine practice of using Vacation Time as employee compensation and allowing Vendors and other third parties to use Vacation Time for promotional purposes constitutes an unconscionable commercial practice. Further, RCI misrepresents and knowingly conceals, suppresses and omits material facts regarding the nature and extent of its practice of using Vacation Time as employee compensation and allowing Vendors and other third parties to use Vacation Time for promotional purposes, and the attendant depletion of inventory from the RCI SPACEBANK® system, with the intent that members and prospective members will rely thereon.

39.     Because RCI sells Vacation Time to Vendors for resale to the general public, rents Vacation Time, authorizes the use of Vacation Time in connection with its own and its affiliates' promotions, and provides Vacation Time to its employees and others, Points Members do not have access to a pool of Vacation Time comprised of all the Timeshare Intervals deposited for exchange by other RCI members, and are often unable to obtain comparable Vacation Time through the RCI SPACEBANK® system.

40.     Because RCI sells Vacation Time to Vendors for resale to the general public, rents Vacation Time, authorizes the use of Vacation Time in connection with its own and its affiliates' promotions, and provides Vacation Time to its employees and others, Points Members do not obtain the benefit of their bargain in joining and/or participating in RCI Points and the value of Points Members' memberships in RCI Points is less than the value of the memberships as represented by RCI.

41.     Because RCI sells Vacation Time to Vendors for resale to the general public, rents Vacation Time, authorizes the use of Vacation Time in connection with its own and its affiliates' promotions, and provides Vacation Time to its employees and others, the value

received by Points Members for the payment of Exchange Fees is less than the value of these fees as represented by RCI.

42.　　Because RCI sells Vacation Time to Vendors for resale to the general public, rents Vacation Time, authorizes the use of Vacation Time in connection with its own and its affiliates' promotions, and provides Vacation Time to its employees and others, the value of Points Members' Timeshare Intervals is less than the value of these Timeshare Intervals as represented by RCI.

43.　　RCI acquired Membership Fees, Exchange Fees, Vendor Fees, rental income, and other money by means of its conduct alleged in this pleading.

**C.　　Plaintiffs' Experience With RCI.**

44.　　On May 3, 2004, Plaintiff Glenz signed a participation agreement with RCI for its RCI Points program, which was in conjunction with his purchase of a Timeshare Interval at the Sunset Ridge Resort in Pigeon Forge, Tennessee.

45.　　Subsequent thereto, Plaintiff Glenz made numerous attempts to use his RCI points for vacation time at various destinations offered by RCI. In most instances, Plaintiff Glenz made such attempts several months in advance, but was unable to book a Vacation Interval at the resort or destination he preferred.

46.　　For example, Plaintiff Glenz made, inter alia, the following attempts to book Vacation Intervals through RCI by way of using his RCI Points:

　　　　　　a)　　In 2005, Plaintiff Glenz attempted to book a trip to the Chicago, Illinois area three to four months in advance of his desired travel dates, but was told that nothing was available;

　　　　　　b)　　In May of 2004, Plaintiff Glenz attempted to book a trip to any of the multiple locations in the Outer Banks of North Carolina, but was told that nothing was available;

-12-

c)     In August of 2004, Plaintiff Glenz attempted to book a trip to Mackinac Island, Michigan, one and one-half months in advance, but was told that nothing was available;

d)     In Spring of 2005, Plaintiff Glenz attempted to book a trip to Eureka, Arkansas, three months in advance, but was told that nothing was available;

e)     Plaintiff Glenz attempted to book a trip to Jackson Hole, Wyoming, but was told he needed to book his trip two years in advance; and

f)     Plaintiff Glenz attempted to book a trip to Rapid City, South Dakota, but was told he needed to book his trip one year in advance.

47.     In 2003, Plaintiff Giacchi signed a Participation Agreement with RCI for its RCI Points Program, which was in conjunction with her purchase of a Timeshare Interval at Summer Bay Resort in Clermont, Florida.

48.     Subsequent thereto, Plaintiff Giacchi made numerous attempts to use her points at various locations in Florida and elsewhere. In most instances, such attempts were made several months in advance, but she was unable to book the vacation interval at the resort or destination she preferred.

49.     For example, Plaintiff Giacchi made the following attempts to book Vacation Intervals through RCI by way of using her RCI Points:

a.     In July 2006 she contacted RCI and requested a location in Fort Lauderdale, Florida. She was told there was nothing in Fort Lauderdale but RCI did place her in a facility in Hollywood Beach, Florida. In November 2006, she went to the Hollywood Beach, Florida location and found a one-bedroom unit that was filthy, with broken windows and was, in effect, a run-down motel.

b.     In October 2007 she contacted RCI seeking accommodations in Rome, Italy. She did not receive a response immediately, and in December of 2007, she contacted RCI again, who told her they were still searching. In February 2008, she called again, and she was told that they found a place that was a converted farmhouse well outside of Rome, and she was told they have nothing in the city of Rome. As a result, she went to Rome in June 2008 but paid for her own hotel and

-13-

her own airfare without using points.  She did, however, use some points for a rental car.

c.      In July of 2009, Plaintiff Giacchi again sought to stay in either Miami or Fort Lauderdale through RCI.  She was called back by RCI approximately one week later and was told that they only have a complex in Pompano Beach, Florida.  She went to Pompano Beach, Florida in November 2009 and found the unit was dirty, had bugs and looked like another converted old motel.

d.      In November 2009, she contacted RCI for the purpose of going to Sicily.  She was told they have nothing available in Sicily, and as a result, she had to pay thousands of dollars for a hotel.  She was allowed to use 25,000 points for airfare, but she still had to pay $1,200.00 out of pocket for the airfare.

50.      On September 24, 2008, Donna Moyer signed a Participation Agreement with RCI for the RCI Points Program which was in conjunction with purchase of a Timeshare Interval at Patriots Place Resort in Williamsburg, Virginia.

51.      Subsequent thereto, Plaintiff Moyer made numerous attempts to use RCI Points for a vacation for various locations and other uses.  In most instances, those attempts were made several months in advance but she was unable to book a vacation interval or use the other points otherwise as represented.  For example, Plaintiff Moyer made the following attempts to use RCI Points:

a.      In January 2010 Ms. Moyer called RCI for a hotel for May 11, 2010 for three to four nights in London.  She was looking for a hotel near Stansted Airport in England.  RCI told her Hilton Hotels has a 50 percent off sale ($239.00 per night), plus 25 percent points plus an exchange fee of $59.00.

b.      In February 2010, Ms. Moyer called RCI to go to Myrtle Beach, South Carolina for March or April 2010.  She was told that it would cost her 47,000 points plus a $179.00 exchange fee.

c.      In March 2010, Ms. Moyer called RCI to get accommodations in Massannautten Resort, an Eagle Trace Resort in Virginia for June, July or August 2010.  She was told that there were no available locations at that resort, but rather there are available units at the Wood Stone Resort, which is not an Eagle Trace location.

-14-

52.     On or about September 24, 2004, Dorothy Wood signed a Participation Agreement with RCI for the RCI Points Program which was in conjunction with purchase of a Timeshare at Avia West in Vancouver, Canada.

53.     Subsequent thereto, Plaintiff Wood made numerous attempts to use RCI Points for a vacation for various locations and other uses. In most instances, she made these attempts several months in advance but was unable to book a vacation interval or use the other points otherwise as represented. For example, Plaintiff Wood made the following attempts to use RCI Points:

a.     In approximately September 2005, Plaintiff Wood made numerous calls to RCI to try to obtain a unit in Avila Beach, California. Plaintiff Wood began calling approximately ten months in advance to try to get a unit in Avila Beach, California for the Summer of 2006. She was told nothing was available.

b.     In a similar vein, in the Fall of 2004 and 2007 Plaintiff Wood made numerous calls to RCI to try to obtain a unit on the Oregon Coast for the Summer of 2005 and 2008 respectively. Despite these numerous calls approximately ten months in advance, she was told nothing was available.

c.     In Summer 2007, Plaintiff Wood called RCI to try to obtain a unit to go to Sedona. She was able to use some of her points, but RCI told her only six days were available, not seven, and so she had to pay the cleaning fee of approximately $75.

d.     In June 2008, Plaintiff Wood called RCI to try to obtain a unit to go to southern California. She was told nothing was available. Plaintiff Wood called RCI back five or six times to check again and was told that nothing was available.

54.     Since purchasing this Timeshare Intervals, Plaintiffs have repeatedly attempted to use their points with RCI. Plaintiffs have never been able to exchange their points for a Timeshare Interval in or near the geographic location they requested, and when they accepted an alternative location offered by RCI, the accommodations were not comparable to their own units at the Sunrise Ridge Resort that they deposited into the RCI SPACEBANK® system.

-15-

3904196

55.    Since their initial contact with RCI to the present, RCI has never advised Plaintiffs that RCI rents Vacation Time to the general public, sells Vacation Time to Vendors for resale to the general public, uses or authorizes the use of Vacation Time in the promotion of its and its affiliates' products, and uses or authorizes the use of Vacation Time as a form of employee compensation.

56.    Plaintiffs had no reason to expect that RCI would rent Vacation Time to the general public, sell Vacation time to Vendors for re-sale to third parties, use or authorize the use of Vacation Time in the promotion of its and its affiliates' products, and use or authorize the use of Vacation Time as a form of employee compensation.

57.    Plaintiffs acquired membership in RCI Points because RCI consistently and uniformly represented that he would be able to exchange their points for Timeshare Intervals, that the pool of Vacation Time existed solely for the use and benefit of RCI members, and that Vacation Time could be accessed solely through the RCI SPACEBANK® system.

58.    Plaintiffs retained and renewed their membership in RCI Points, and continued to pay annual maintenance fees because RCI affirmatively misrepresented that through the RCI SPACEBANK® system, they would be able to exchange his points towards Timeshare Intervals, that the pool of Vacation Time existed solely for the use and benefit of RCI members, and that Vacation Time could be obtained solely through the RCI SPACEBANK® system.

59.    Because RCI has reduced the pool of Vacation Time available for use, Plaintiffs were unable to use the RCI SPACEBANK® system to exchange their points for any Timeshare Intervals that they wanted to use.  Plaintiffs membership in RCI Points and the fees they paid RCI have provided little or no value to them.

-16-

60.     Ultimately, Plaintiff Glenz deeded back his Timeshare Interval to Sunset Ridge Resort for $0 on May 1, 2008.  Plaintiffs Giacchi and Moyer continue to be RCI Points members.

61.     Plaintiffs would not have joined RCI Points, renewed their membership in RCI Points, or paid Exchange Fees or other fees to RCI, had they known of RCI's wrongful conduct as set forth herein.

## TOLLING OF STATUTES OF LIMITATIONS

62.     Through a continuing course of misrepresentations and omissions, RCI actively concealed from Points Members the existence of their causes of action against RCI, such that Points Members could not have, through reasonable diligence, discovered their causes of action against RCI. RCI had actual or constructive knowledge of the wrongful courses of action alleged in this pleading. Plaintiffs and Class members were kept in ignorance of information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and Class members did not discover the facts constituting RCI's unconscionable commercial practices until a date within the limitations period governing this action, and Plaintiffs promptly exercised due diligence by filing this Complaint. As a result of RCI' s concealment, Plaintiffs and Class members are not at fault for failing to discover RCI's misconduct sooner, and had no actual or presumptive knowledge of the facts of RCI's misconduct to put them on notice. Plaintiffs and Class members could not have reasonably discovered RCI's misrepresentations, material omissions and/or unconscionable commercial practices before the filing of this Complaint and, therefore, their claims accrued on the date this Complaint was filed, and any statutes of limitations were tolled until that time.

3904196

## CLASS CERTIFICATION

63.    This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons throughout the United States and its territories who are or were Resort Condominiums International, LLC's ("RCI") Points Members. Excluded from the Class are RCI and its officers and directors.

64.    Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The size of the Class is estimated to be in the millions.

65.    Plaintiffs' claims are typical of those of the Class, all of whom have suffered harm due to RCI's uniform course of conduct.

66.    There are numerous and substantial questions of law and fact common to members of the Class that control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, inter alia:

  a)    Whether RCI engaged in deceptive business practices in connection with its advertising of RCI Points;

  b)    Whether RCI engaged in unconscionable commercial practices in connection with its performance of RCI Points;

  c)    Whether RCI developed and implemented a coordinated and uniform marketing strategy designed to create and maintain the false impression among Plaintiffs and the Class that access to Vacation Time deposited by RCI members is completely or almost completely limited to RCI members;

  d)    Whether RCI developed and implemented an unconscionable, coordinated, and uniform operating strategy designed to make Vacation Time routinely available to persons other than RCI members, thereby

3904196

decreasing the quality and quantity of Vacation Time available to Plaintiffs and Class members;

e)    Whether RCI knowingly misrepresented, concealed, suppressed or omitted from Plaintiffs and the Class facts material to Plaintiffs' and the Class' purchasing decisions in connection with the sale or advertisement of RCI Points or RCI's subsequent performance of RCI Points with the intent that Plaintiffs and the Class would rely upon such concealment, suppression or omission to purchase a Timeshare Interval, purchase membership in RCI Points, maintain membership in RCI Points, pay Exchange Fees to RCI, and pay other fees to RCI;

f)    Whether RCI has engaged either directly or indirectly in the business of a real estate broker without being licensed to do so;

g)    Whether RCI' s uniform marketing strategy and operation of RCI Points violate the New Jersey Consumer Fraud Act and other various consumer fraud acts across the nation;

h)    Whether Plaintiffs and the Class suffered ascertainable losses as a proximate result of RCI's affirmative acts and knowing concealment, suppression or omission of material facts, or RCI's engagement in the business of a real estate broker without being licensed so to do; and

i)    Whether RCI acquired money by means of conduct declared unlawful by NJ.S.A. 56:8-2.

67.    RCI's conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Class as a whole pursuant to Rule 23(b )(2).

68.    A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

a)    Without a class action, the Class will continue to suffer damage, RCI's violations of the law or laws will continue without remedy, and REI will continue to enjoy the fruits and proceeds of its unlawful misconduct;

b)    Given (i) the substantive complexity of this litigation; (ii) the size of individual Class members' claims; and (iii) the limited resources of Class members, few, if any, Class

-19-

members could afford to seek legal redress individually for the wrongs RCI has committed against them;

c)     This action will foster an orderly and expeditious administration of Class members' claims, economies of time, effort and, expense, and uniformity of decision; and

d)     Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within Class members' claims, as are accepted methodologies for class-wide proof of losses and damages; alternatively, upon adjudication of RCI's liability, the Court can efficiently determine the claims of individual Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best, if not the only, available means by which members of the Class can seek legal redress for the harm caused them by RCI.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATIONS OF CONSUMER PROTECTION LAWS

69.     Plaintiffs re-allege paragraphs 1 through 68 as if fully set forth herein.

70.     This is a claim for violations of the New Jersey Consumer Fraud Act, NJ.S.A. § 56:8-1, et seq., and those other state consumer protection statutes which are in all material respects similar to it.

71.     Section 56:8-2 of the New Jersey Consumer Fraud Act, provides, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as

-20-

aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

72.    Section 56:8-2.11 of the New Jersey Consumer Fraud Act further provides:

Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

73.    Plaintiffs and other Class members are "consumers" or "persons," as defined and construed under NJ.S.A. § 56:8-1(d), and other states' Consumer Protection Laws.

74.    RCI's conduct as alleged herein occurred in the course of trade or commerce.

75.    In connection with the sale or advertisement of RCI Points and RCI's subsequent performance of RCI Points, REI performed the following affirmative acts that constitute unconscionable commercial practices, deception, and misrepresentations, and knowingly concealed, suppressed, or omitted the following material facts with the intent that Plaintiffs would rely on such concealment, suppression or omission:

a)    Falsely represented, expressly and implicitly, directly and through intermediaries, in direct mail promotional materials, in timeshare sales meetings, internet communications, telephonic communications and through other public and private communications, that access to Vacation Time is completely or almost completely limited to RCI members and that Points Members are able to exchange their points for Timeshare Intervals around the world;

b)    Failed to disclose that RCI rents Vacation Time to the general public, sells Vacation Time to Vendors for resale to the general public, uses or authorizes the use of Vacation Time in the promotion of its and its affiliates' products and uses or authorizes the use of Vacation Time as a form of employee compensation;

-21-

3904196

c)   Engaged either directly or indirectly in the business of a real estate broker without being licensed to do so;

d)   Sold Vacation Time to Vendors for resale to the general public;

e)   Rented Vacation Time to the general public; and

f)   Used or authorized the use of Vacation Time in its own and its affiliates' promotion of other products.

76.   RCI had no intent to, and did not, limit access to Vacation Time completely or almost completely to RCI members.

77.   RCI's affirmative acts, knowing suppression, omission or concealment of material facts and other conduct set forth in this pleading were conducted with the intent that Plaintiffs would rely thereon, purchase membership in RCI Points, maintain membership in RCI Points, pay maintenance fees, pay Exchange Fees to RCI, and pay other fees to RCI.

78.   RCI's affirmative misrepresentations and acts, knowing suppression, omission, or concealment of material facts, and other conduct set forth in this pleading, constitute regulatory violations, including, among others, violation of laws prohibiting persons, firms and corporations from engaging either directly or indirectly in the business of a real estate broker without being licensed to do so.

79.   RCI's unlawful conduct, including its affirmative acts, its knowing suppression, omission or concealment of material facts, and its regulatory violations, proximately caused Plaintiffs to sustain ascertainable losses because, inter alia, the actual amount paid by Plaintiffs for membership in RCI Points is more than the actual value of Plaintiffs' membership in RCI Points as represented by RCI, and because Plaintiffs paid Exchange Fees for the right to book Vacation Intervals using RCI Points as represented by RCI, but was prohibited from fully and completely utilizing the service for which he paid due to RCI's unlawful business practices.

3904196

80.     RCI's affirmative acts, knowing suppression, omission or concealment of material facts, and other conduct set forth in this pleading, are unlawful practices within the meaning of NJ.S.A. 56:8-2.

81.     By reason of the foregoing, RCI is liable to Plaintiffs and other Class members in an amount to be proved at trial, including, but not limited to, the reduced value of his RCI Points memberships and the corresponding RCI points, treble damages, attorneys' fees and litigation expenses or other penalties as may be appropriate under applicable law.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH

## AND FAIR DEALING

82.     Plaintiffs re-allege paragraphs 1 through 81 as if fully set forth herein.

83.     Plaintiffs entered into a contract with RCI in connection with Plaintiffs s memberships in RCI Points. RCI sets forth the terms and conditions that ostensibly govern the relationship between Plaintiffs and RCI in the RCI Directory of Resorts and in RCI's publication ENDLESS VACATION. The Terms and Conditions, which appear in small print, purport to permit RCI to change the terms and conditions of the contracts unilaterally without prior notice and without consent of Points Members. RCI purports to provide notice of its unilateral changes to the terms and conditions on its website or in RCI's ENDLESS VACATION publication, which RCI sells to its members.

84.     Plaintiffs performed their obligations under the contract and has paid all Exchange Fees, Membership Fees and other fees purportedly owed to RCI.

-23-

3904196

85.     Plaintiffs' contract with RCI contains an implied covenant of good faith and fair dealing prohibiting RCI from doing anything that will destroy or injure Plaintiffs' rights to the fruits of the contract and the benefit of the bargain or frustrate Plaintiffs s expectations and the fundamental purpose of the contract.

86.     RCI's improper reduction of the Vacation Time available to Points Members through the RCI SPACEBANK® system in the manners alleged herein was intended to and did frustrate Plaintiffs' expectations and thwarts the fundamental purpose of the contract-securing access to Vacation Time.

87.     Strictly limiting RCI's ability to rent or otherwise dispose of Vacation Time, a limitation RCI does not recognize or honor, is necessary to give efficacy to the contract between Plaintiffs and RCI.

88.     RCI reduced and continues to reduce the pool of Vacation Time available to Points Members in an arbitrary, unreasonable, and capricious manner.

89.     RCI's bad faith performance of its purported contract with Plaintiffs is the result of RCI's improper conduct as alleged herein, including the advancement of the business interests of RCI and its affiliates to the detriment and at the expense of Plaintiffs and Class members.

90.     RCI acted in bad faith when it destroyed or injured Plaintiffs' rights to use his RCI Points and when it performed the contract with Plaintiffs, because RCI performed the contract in a manner calculated to enrich itself and its affiliates by improperly using Vacation Time to reduce the value of Points Members' memberships.

3904196

91.    RCI's systematic reduction of the pool of Vacation Time available for use was beyond the expectations of Plaintiffs at the formation of the contract. Plaintiffs did not reasonably expect that RCI would rent or otherwise dispose of Vacation Time so as to destroy the benefit of his bargain. RCI engaged in this bad faith performance for illegitimate motives, to enrich itself through the rental and sale of Vacation Time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that the Court enter an order of judgment against RCI, including the following:

a.    certification of the action as a class action pursuant to Rule 23(b )(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment. of Plaintiffs as Class Representative and Plaintiffs' counsel of record as Class Counsel;

b.    a declaration that RCI engages in the business of a real estate broker without being licensed to do so;

c.    an order providing injunctive relief to enjoin the conduct about which Plaintiffs complains;

d.    an order declaring that RCI's unconscionable commercial practices, misrepresentations, omissions and other conduct as alleged herein violate the New Jersey Consumer Fraud Act;

e.    reimbursement of ascertainable losses in the amount of monies paid by way of Plaintiffs' and the Class' memberships in RCI Points, monies paid to maintain and renew their memberships in RCI Points, monies paid for Exchange Fees to RCI, and other fees paid to RCI;

f.    actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

g.    pre-judgment and post-judgment interest on such monetary relief;

h.    the costs of bringing this suit, including reasonable attorneys' fees; and

i.    such other relief to which Plaintiffs and the members of the Class may be entitled at law or in equity.

3904196

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted.

Dated: May 12, 2010

Anton Glenz, Valentina Giacchi, Donna Moyer, and Dorothy Wood individually and on behalf of all others similarly situated,

By: _____

Philip A. Tortoreti, Esq.
Keven H. Friedman, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Woodbridge, New Jersey 07095
Telephone: (732) 636-8000
Attorneys for Plaintiffs

Of Counsel:

Ben Barnow
Sharon Harris
Blake A. Strautins
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

John S. Steward
Burstein Law Firm, P.C.
225 S. Meramec, Ste. 925
St. Louis, Missouri 63105
Phone (314) 725-6060
Fax (314) 862-9895

3904196